**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DOROTHY HOLMES, on her own behalf and as Special Administrator of the Estate of RONALD JOHNSON III, deceased, | ) ) ) | |
| | ) | No. 14 C 8536 |
| Plaintiff, | ) ) | |
| | ) | Judge Chang |
| v. | ) ) | Magistrate Judge Schenkier |
| Officer GEORGE HERNANDEZ (Star #16231), individually, and the CITY OF CHICAGO, | ) ) ) ) | |
| | ) | CONTESTED MOTION |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**
**PROHIBITING THE PUBLICATION OR DISSEMINATION**
**OF VIDEO FOOTAGE OF THE SHOOTING INCIDENT**

Defendants City of Chicago and Officer George Hernandez (collectively "Defendants"), by and through one of their attorneys, Christopher A. Wallace, Senior Counsel of the City of Chicago Department of Law, respectfully request that this Court issue a protective order designating the video footage of the shooting incident in question as confidential until the conclusion of the proceedings and prohibiting Plaintiffs from releasing the video to the public at large, any member of the media, or to anyone else other than specifically for purposes of litigation. In support of this motion, Defendants state as follows:

<u>BACKGROUND</u>

Plaintiff Dorothy Holmes, individually and as administrator of the Estate of Ronald Johnson III filed suit in this Court on October 29, 2014, roughly two weeks following the incident. Plaintiffs' lawsuit, in relevant part, alleges excessive force and wrongful death against the City and Officer George Hernandez. The incident occurred on October 12, 2014, at approximately 12:35 a.m. at or near the intersection of 53rd St. and Martin Luther King Dr. on Chicago's Southeast side. Portions

1

of the incident were captured on video by an in-car camera operating in one of the police vehicles on scene. The footage does not have corresponding audio. Ronald Johnson sustained two gunshot wounds and died as a result of his injuries.

In discovery in this matter, Plaintiff has requested the documents regarding the incident including any related video footage. Defendants are obligated to produce the responsive video footage to Plaintiff as part of their discovery obligations and certainly intend to do so. However, Defendants are concerned that Plaintiff will release the video footage to the media rather than utilize it strictly for the purposes of this litigation. Release of such footage to the media serves no purpose in this case in terms of resolution of Plaintiffs' claims against Defendants. Rather, release of the video could potentially taint the jury pool, expose Office Hernandez to unwarranted safety risks, and make it impossible for the Defendants to obtain a fair trial in this matter. What the video depicts as it relates to this case should be determined by the trier of fact and in the confines of this Court. It is not the fodder for media sensationalism. This is particularly true given the recent well-publicized incidents involving police officers across the country and here at home.

Defendants seek a protective order designating the videos of the incident as confidential and prohibiting their release to the media, to the public at large, or to any other individual except for purposes of litigation. No prejudice to Plaintiffs will result in providing the relief requested in this motion as it does not prohibit Plaintiff from utilizing said video for this litigation in any meaningful way.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, undue burden, or expense." FED. R. CIV. P. 26(c). "Good cause is difficult to define in absolute terms, but generally signifies a sound basis or legitimate need to take judicial action." *Hobley v. Burge,* 225

2

F.R.D. 221, 224 (N.D. Ill. 2004) (Brown, J.). Good cause is established by showing that the disclosure will cause a clearly defined and serious injury. *Id.* In determining whether there is good cause for a protective order, the court must balance the interest involved. *Id.* "While Rule 26 generally contemplates broad, public discovery, the Rule does not sanction the misuse of the judicial system and the discovery procedure by any party." *Baker v. Buffenbarger*, 03 C 5443, 2004 WL 2124787, *3 (N.D. Ill. Sep. 22, 2004); *citing Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) ("It does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been learned through pretrial discovery.")

Notably, the Seventh Circuit has distinguished between filed and unfiled discovery for purposes of confidential protection. For instance, in *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002), the court stated that "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record." And in *Bond v. Utreras*, the court re-emphasized that "[t]here are good reasons to treat the public's right to access filed and unfiled discovery materials differently." 585 F.3d 1061, 1074-75 (7th Cir. 2009). "Generally speaking, the public has no constitutional, statutory (rule-based), or common-law right of access to unfiled discovery." *Id.* at 1073. The Seventh Circuit re-confirmed its position distinguishing between filed and unfiled discovery for purposes of confidential protection. *Goesel v. Boley Int'l*, 738 F.3d 831, 833 (7th Cir. 2013).

In this case, the video footage is not likely to become part of the judicial record prior to trial. Even so, while "courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents... the right to inspect and copy judicial records is not absolute [, and]...[e]very court has supervisory power over its own records and files." *Nixon v. Warner Communications*, 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Recognizing the Court's broad supervisor power in this field, the Supreme Court has held that "the

decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of a particular case." *Id.* at 599.

## **ARGUMENT**

Good cause exists to enter a protective order prohibiting public dissemination of the video prior to the conclusion of the proceedings in this case. The dissemination of the video to the media or otherwise publishing footage of this police shooting could taint the jury pool and harm Defendants' right to a fair trial. Further, as recent well-publicized incident of police shootings and other high-profile incidents involving police officers have demonstrated, dissemination of such footage has the potential to expose Officer Hernandez to unwarranted safety risks. In addition, upon information and belief, the video is evidence in an ongoing investigation into the incident by the Independent Police Review Authority as well as the Cook County State's Attorney's Office. Its release could compromise the integrity of that investigation. In short, there is ample reason to preclude Plaintiff from disseminating the video footage to the public.

On the other hand, Plaintiff suffers absolutely no harm if the Court precludes the release the video to the media or prevents Plaintiff from otherwise publishing its contents during the pendency of this litigation. Again, the relief Defendants seek does not impede Plaintiff's discovery efforts or foreclose their access to relevant materials and the protective order sought by this motion does not limit the Plaintiff's use of such video at trial. Rather, the protective order sought in this motion precludes the use of the video footage for purposes other than litigating the claims brought in this civil action. As such, an order prohibiting release of the video until the conclusion of the proceedings would strike the proper balance between the right of access to such materials and the Defendants' interest in ensuring a fair trial by an impartial jury. Consequently, Defendants move for this protective order.

4

   a. **Dissemination of the video would impede Defendants' right to a fair trial.**

The release of the video footage of the shooting in this case could severely harm Defendants' right to a fair trial. "Television indubitably has a much greater potential impact on jurors than print media." *In re NBC Universal, Inc.*, 426 F.Supp.2d 49, 58 (E.D.N.Y. 2006). "Voir dire would be an insufficient cure if a large segment of citizens in this district are exposed to the prejudicial information; exclusion of a considerable portion of the population would skew the panel, making it more difficult to find a cross-section of the community. *Jurors' assurances that they have not been influenced by media reports are not necessarily dispositive*." *Id.* (emphasis added). And, as Courts have recognized, "[v]ideotapes are subject to a higher degree of potential abuse than transcripts. They can be cut and spliced and used as sound-bites on the evening news…" *Hobley*, 225 F.R.D. at 226 (*quoting Felling v. Knight*, IP 01-0571-C-T/K, 2001 WL 1782360, *3 (N.D. Ind. Dec. 21, 2001); *see also Jones v. Clinton*, 12 F.Supp.2d 931, 934 (E.D. Ark. 1998) (detailing extensively potential problems in releasing video to media). In addition, social media/networking sites, such as youtube and facebook, allow for wide dissemination of video footage.

Even if the media, for example, aired the video in its entirety without splicing or editing, the footage to show certain portions, this would still prejudice Defendants. The video is of fairly low quality and it does not tell the complete story in this case. In addition, there is no sound on the video and thus, it cannot be put into proper context. Due to the relatively low video quality, one cannot see the detailed movements of the decedent or discern the time when all the shots were actually fired or the time of the impact injury to the decedent. Consequently, the video by itself paints an incomplete picture, which could be severely prejudicial to the jury pool, causing them to form conclusions without regard to a complete explanation. In addition, the video contains graphic footage of a shooting. Further, precluding public dissemination of the video, including giving it to

the media, would allow jurors at trial to view it with fresh eyes and with full context of the evidence the parties will present.

This issue was addressed extensively in *Whitaker v. Springettsbury Township*, 08 C 627, 2010 WL 1565372, *3 (M.D. Penn. Apr. 19, 2010). There, a member of the media wished to intervene and obtain the videotape in a fatal shooting case by a police officer which had been filed under seal in a motion for summary judgment. The Court there found that it would be inappropriate to broadly disseminate the video prior to the resolution of the case, because the release of that video could prejudice the parties to secure an impartial jury. The Court found that "the prudent course would be to deny [the request to release the video], at present, without prejudice to the renewal of the request following the conclusion of the proceedings when the risk of unfair prejudice would be greatly diminished." *Id.* The Western District of Louisiana reached a similar conclusion, holding that the video of a fatal incident could not be released prior to trial because "[t]he graphic nature of the Video would most likely prejudice potential jurors who see the video on the local news against Wal-Mart, thereby affecting Wal-Mart's right to a fair trial." *Partin v. Wal-Mart Louisiana, LLC,* 09-2229, 2011 WL 441474, *2 (W.D. La. Feb. 1, 2011) (affirming issuance of protective order prohibiting Plaintiff from disseminating video to the media and quoting magistrate judge's opinion). In fact, "courts have repeatedly exercised their discretion by entering protective orders limiting pre-trial disclosure of such video taped discovery material in the pre-trial stages of litigation." *Whitaker*, 2011 WL 1565372, *3 (collecting cases).

Recently, Judge Kennelly in *Coleman v. City of Chicago, et al.*, 12 C 10061, addressed a similar issue with respect to maintaining confidentiality of video footage in relation to an incident involving the tasing of an individual in police lock-up. In *Coleman*, Plaintiff sought to remove the video footage

from an existing confidentiality designation.[1]  Judge Kennelly, citing *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013); *Baxter Int'l, Inc. v. Abbot Labs*, 297 F.3d 544, 545 (7th Cir. 2002), denied Plaintiff's efforts to remove a confidentiality designation of video footage of the incident. (*See* 4/4/14 Order, attached hereto as Ex. 1). In addition, Magistrate Judge Brown granted a similar motion in *Chatman v. City of Chicago*, 13 C 5697, 2/25/14 Minute Order, docket entry 41 (M.J. Brown), attached hereto as Ex. 2.

Because the right of Defendants to a fair trial could be, and indeed likely would be, impeded by the release of the video footage, Defendants' request for a protective order should be granted.

**b. Dissemination of the video could interfere with the ongoing investigation into the shooting incident, including possible criminal charges.**

Defendants understand that the Independent Police Review Authority (IPRA) is reviewing this shooting incident and has not yet concluded its investigation.  Upon information and belief, the video footage is part of an on-going investigation by IPRA.  In addition, upon information and belief, the shooting incident is currently being reviewed by the Cook County State's Attorney's Office for possible criminal charges against Officer Hernandez.  Consequently, a protective order is appropriate as the release of the video footage could potentially interfere with IPRA's on-going investigation as well as any criminal investigation being conducted by the Cook County State's Attorney's Office.

**c. Dissemination of the video footage could expose Officer Hernandez to an unwarranted safety risk.**

In addition to the above stated concerns, there is also a risk to Officer Hernandez that release of the video could needlessly expose him to cyberstalking, harassment, and even physical violence.  In the aftermath of the Ferguson, Mo., shooting, Officer Darren Wilson received death

---

[1] The parties have discussed entry of a Confidentiality Order that would not include the video footage but have not yet been able to reach an agreement as to terms in light of this Court's pending determination of a similar issue in *Duprey v. City of Chicago*, 15 C 111.

threats and was forced into hiding. (*See* http://www.cnn.com/2014/12/03/us/ferguson-darren-wilson-protection/). Release of the video to the media in this case carries with it a risk of similar incidents. Recent events in other high profile police involved incidents highlight the potential risk associated with dissemination. Allowing dissemination to the media as well as release to social media sites such as youtube and facebook needlessly create safety risks. These risks can be easily avoided without any prejudice to Plaintiff or the prosecution of this case by restricting the dissemination of the video.

### d. The Plaintiff would suffer no prejudice from preventing disclosure until the conclusion of the proceedings.

Plaintiff will suffer no prejudice as a result of a protective order being entered designating the video footage confidential. Plaintiffs have no right to try the case in the media. To the contrary, the ABA Model Rules of Professional Conduct, incorporated into this Court's local rules in Local Rule 83.50, specifically limit the statements which may be made by counsel in a pending litigation matter, stating "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." American Bar Association Model Rule 3.6(a).

In this case, dissemination of the video to the press or otherwise publishing it serves no purpose. Precluding the release of the video footage would prevent attempts by Plaintiffs to utilize the media to influence the venire's view of the Chicago Police Department with inflammatory allegations and an entirely incomplete picture of the incident at hand. Indeed, given the current media spotlight on police involved incidents, prohibiting the release of the video would not prejudice the Plaintiff at all; rather, it would merely require Plaintiff to try his case on the facts without using the media to gain favorable public sentiment within the venire.

**e. This is a fair solution which preserves the public's right of access**.

Defendants anticipate that Plaintiff may argue that the public has a right of access to these records which may not be impeded by a protective order. First of all, it is not clear whether Plaintiff would have standing to assert such an argument. In *Rathman v. Chertoff*, 05 C 3761, 2007 WL 2892972, *2 (N.D. Ill. Sep. 28, 2007), Judge Guzman indicated concern as to whether a Plaintiff who has unrestricted access to all discovery could challenge the sealing of portions of filed documents on behalf of the public at large, noting that the only Circuit to have addressed the issue found no standing.

However, even assuming *arguendo* that Plaintiff has standing to challenge on behalf of the public, restricting public access to the video until the close of the proceedings strikes the proper balance of the need for the public access to information with the need to fair trial. Defendants are not arguing that this video may never be made public. Rather, they seek to avoid the release of the video during the pendency of these proceedings to avoid any prejudice on the jury pool. Courts have repeatedly found such a balance to be proper. *See U.S. v. Weed*, 184 F.Supp.2d 1166, 1176-1177 (N.D. Ok. 2002) (prohibiting release of videotape prior to trial to preserve right to fair trial and finding "the government's proposal that the tape be sealed until the jury in this case has been selected and sworn is narrowly tailored to protect its right to a fair trial); *see also Partin*, 2011 WL 441474 at *2 (affirming protective order prohibiting dissemination of video depicting fatality until after trial); *Whitaker*, 2010 WL 1565372, *3 (sealing video of fatal shooting due to fair trial and privacy concerns until the conclusion of the proceedings); *In re NBC Universal*, 426 F.Supp.2d 49 (denying media request for access to videos until the conclusion of the trial); *Paine v. City of Chicago*, 06 C 3173, 2006 WL 3065515, *8 (granting protective order and prohibiting release of information that had fair trial and privacy implications); *Baker*, 2004 WL 2124787, *4 (granting protective order prohibiting release of deposition transcripts prior to trial); *Coleman v. City of Chicago*, 12 C 10061,

4/4/14 Minute Order, docket entry 93 (J. Kennelly), attached hereto as Ex. 1; *Chatman v. City of Chicago*, 13 C 5697, 3/25/14 Minute Order, docket entry 47 (M.J. Brown), attached hereto as Ex. 2.

## CONSULTATION WITH PLAINTIFF'S COUNSEL

Defendants conferred with Plaintiff's counsel as to whether or not Plaintiff would agree to the relief requested in this matter. On April 22, 2015, Defense counsel allowed counsel for plaintiffs to view the video footage at Defense Counsel's office. Counsel for Plaintiff and counsel for the defense have had telephone conversations regarding the protective order sought. Plaintiff's counsel is not in agreement to the relief requested by this motion. Defense counsel requested Plaintiff's counsel provide their position in writing and Plaintiff's counsel emailed Defense counsel that they did not agree to confidentiality designation of the video footage. Though their response was silent as to the issue of whether Plaintiff's counsel is motivated by a desire to disseminate the video to the public, Defense counsel can only conclude that Plaintiff's counsel wishes to release the video to the media, allow its publication on social media/networking sites, such as youtube, facebook, or otherwise release the video. Consequently, Defendants are forced to seek relief with the Court.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court enter a protective order designating the video footage of the incident confidential and prohibiting the dissemination of the video to the public, the media, or any third parties absent prior leave of Court. Defendants further request that any video footage produced in this matter be returned to Defendants upon the conclusion of the proceedings in this matter.


Dated: May 8, 2015

Respectfully submitted,

*/s/ Christopher A. Wallace*
Christopher A. Wallace
*Attorney for Defendants*

Senior Counsel
City of Chicago Department of Law
30 N. LaSalle Street
Suite 900
Chicago, Illinois 60602
T: (312) 742-6408
F: (312) 744-6566

## CERTIFICATE OF SERVICE

I, Christopher Wallace, hereby certify that on May 7, 2015, I caused a copy the above Defendants' motion to be served upon all counsel of record by filing the same before the Court via the ECF system.