# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOROTHY HOLMES, on her own behalf ) 
and as Special Administrator of the Estate )
of RONALD JOHNSON III, )
                   )
        Plaintiff, )      No. 14 C 8536
                   )
      v. )
                   )      Judge Edmond E. Chang
GEORGE HERNANDEZ and )
THE CITY OF CHICAGO, )
                   )
        Defendants. )

### ORDER

This case management order addresses the pending discovery motions, which consumed over 600 pages of briefs and exhibits, all of which related to the *Monell* claim. The order also sets the schedule going forward.

**1. City's motion to compel [277] responses to Third and Fourth Set of Interrogatories and renewed motion to bifurcate.** The City moves to compel Plaintiff to answer certain interrogatories, specifically two sets that are directed at uncovering the particular contentions that underlie Plaintiff's *Monell* claim. R. 277 at 5-6. It is true that, in some cases and on some claims, early contention interrogatories can help focus the discovery going forward. This is not that case, nor is the *Monell* claim that kind of claim. The bulk of the facts underlying the *Monell* claim will be in the hands of others, including the City, rather than Plaintiff. For that reason, it is more likely that contention interrogatories towards the *end* of *Monell* discovery will be useful. Indeed, Plaintiff has two strong incentives to avoid surprises

in her *Monell* theory: first, because a failure to disclose (and not just disclose in general terms, but with specifics) would probably result in barring reliance on the undisclosed facts or contention. (Of course, this incentive unfortunately might prompt unreasonable over-disclosure, as discussed below.) Second, if not barred, then at the least it is likely that the defense would be permitted to pursue discovery on a late-disclosed set of facts or contention, resulting in further delay. The motion to compel additional answers to the third and fourth set of interrogatories is denied.

Relatedly, the City's renewed motion to bifurcate is also denied. Yes, *Monell* discovery predictably has bogged down the case. But the same rationale still applies to permitting the *Monell* claim to be litigated contemporaneously with the claim against the individual officer: there is probable factual relevance to Plaintiff's claim that Officer Hernandez was more likely to shoot Ronald Johnson without justification because Hernandez knew that the alleged code of silence would protect him from consequences. Not every Plaintiff makes the decision to pursue a *Monell* claim when there is no financial upside to the Plaintiff, but this one has and that choice is a sound basis to reject bifurcation.

**2. City's motion [269] to strike Rule 26(a) disclosures and for a protective order against document requests attached to Rule 30(b)(6) notice.** Next, the City moves to strike Plaintiff's Second Amended Rule 26(a) disclosures concerning the *Monell* claim. The disclosures list 19 individuals and the United States Department of Justice. R. 269-6, Exh. F, Second Am. Rule 26(a) Disclosures for *Monell*. The individuals are:

- Mayor Rahm Emanuel

- current Chicago police superintendent, Eddie Johnson, as well as the former superintendents Gerry McCarthy and Jody Weis

- former IPRA Administrator Scott Ando

- Lori Lightfoot, chair of the Use of Force Police Accountability Task Force (which completed its final report in April 2016)

- law professors Randolph Stone and Craig Futterman

- Anita Alvarez, the former Cook County State's Attorney

- litigants against the City: CPD Commander Lorenzo Davis, and police officers Jaeho Jung, Shannon Spalding, Daniel Echeverria

- special prosecutors in the Laquan McDonald case, Joseph McMahon and Patricia Brown Holmes

- Alderwoman Leslie Hairston and Alderman Roderick Sawyer

- convicted former Chicago police officers Keith Herrera and Jerome Finnegan

The breadth of these disclosures well exceeds the bounds of the *Monell* claim that is properly focused on *this* specific case—as distinct from every police misconduct case of every kind brought in this District. Rule 26(b)(1) dictates a balance between the significance of the *Monell* discovery to Plaintiff's claim, the high importance of the issues at stake, and the substantial amount in controversy against the potentially enormous burden and expense of what could otherwise be nearly limitless discovery. Previously in discovery, the Court has struck the balance by focusing on the City's

alleged custom and practice of covering-up unjustified (or, in Fourth Amendment parlance, unreasonable) police shootings of civilians from five years before the shooting in this case, *see* R. 189 (authorizing discovery of IPRA findings on police shootings from 10/12/2009 and 10/12/2014), or department-wide excessive-force analyses directly commissioned by certain City agencies or departments, R. 161 (covering time period from 2005 through the shooting). The parties also agreed to focus on 212 IPRA shooting investigations. R. 253. And, importantly, *Monell* discovery was only in the fact-discovery stage, not expert discovery.

Plaintiff's disclosures go beyond those bounds. First and foremost, Plaintiff invokes Rule 26(a)(2)(C) as justification for some of the disclosures, R. 283 at 2, but that provision covers non-retained *expert* summaries. *Monell* discovery is not at the expert phase. Even if the case were at that stage, the disclosures fall short of even the summary required by Rule 26(a)(2)(C). To be sure, a summary need not be nearly as detailed as a retained expert report under 26(a)(2)(B). But the disclosure still must provide a summary of the facts and opinions to which the expert will testify. (Indeed, the Court retains authority under the rule to require more detail, Fed. R. Civ. P. 26(a)(2)(C) ("Unless otherwise stipulated or ordered by the court …"), and this type of *Monell* claim might very well warrant extending the report requirement to non-retained experts (if there end-up being any).) So the disclosures of the following persons, all of whom "opinion" is at least a part of their purported subject-matter knowledge, is stricken: Emanuel, Eddie Johnson, Scott Ando, Lori Lightfoot, Randolph Stone, Lorenzo Davis, Gerry McCarthy, Jody Weis, Jerome Finnigan, Keith

Herrera, Jaeho Jung, Shannon Spalding, and Daniel Echeverria. Although the disclosure of Professor Futterman does not use the word "opinion," the disclosure describes what would in effect comprise an expert opinion. When the time comes for expert discovery, it might be that Plaintiff will retain some of these persons (or convince them to testify voluntarily) to present expert testimony. But the fact-discovery stage is not the time to put these potential witnesses at issue for their opinion testimony. The Court notes that there might be *factual* information that is properly the subject of discovery right now as to Gerry McCarthy, who participated in the press conference announcing the declination of charges against Defendant Hernandez. If there is a basis to allege that, in this very case, McCarthy disregarded evidence of a cover-up or exhibited indifference to an alleged custom or practice (such as indifference to officer statements that are inconsistent with the video or inoperable audio-recording equipment), then that could warrant a fact (rather than expert) deposition of him. No finding on this issue is possible unless and until Plaintiff makes a more specific motion to compel (or service of a subpoena if McCarthy is not represented by the City's counsel).

Moving on to the second flaw in the disclosures, their breadth extends beyond allegedly unjustified police shootings. Neither the Police Accountability Task Force's final report nor the Department of Justice report were limited in that way, so there are myriad facts comprising those reports that are not tied closely enough to this police-shooting case. The same goes for the disclosures of Jerome Finnegan and Keith Herrera, who were not convicted of police shootings, and the City Council members

(Hairston and Sawyer) who made allegations against, among others, the City's Law Department. It is true that in the arena of public debate and public policy-making (not in the sense of 42 U.S.C. § 1983 policy; this is a custom or practice case), the public and policymakers might very well justifiably discuss the cover-up of police misconduct in broader terms. But the Federal Rules of Civil Procedure governing discovery, as well as the substantive law governing *Monell* claims, place different limits on what is appropriate discovery. In the main, *Monell* discovery in this case must focus on police shootings. There will be exceptions, such as the directly commissioned excessive-force analyses, R. 161, but police shootings must be the focus.

Lastly, two disclosed persons were special prosecutors on the Laquan McDonald case, namely, Joseph McMahon and Patricia Brown Holmes. These persons do not have *personal* knowledge of the facts underlying the McDonald case. They no doubt have extensive *investigative* knowledge of the evidence pertaining to that case. But it is not clear how Plaintiff proposes to gather and, ultimately, to present evidence concerning that case (McDonald was killed after the shooting in this case). It might very well be that, in attempting to prove the *Monell* claim, Plaintiff will be allowed to present specific evidence of other alleged cover-ups of police shootings (rather than be limited to retained-expert analysis of overall statistics). But that would require calling witnesses with personal knowledge or presenting records and video (or both), not presenting special prosecutors who learned facts second-hand. In any event, for now the motion to strike the Second Amended Rule 26(a) disclosures is granted.

The rationale for striking the Second Amended Rule 26(a) disclosures also applies to the overbroad Rule 30(b)(6) document rider. It is apparent, however, that narrower requests can be crafted (and, indeed, Plaintiff asserts that Plaintiff's counsel agreed to some limitations). For example, the allegation that officers intentionally did not turn on audio-recording equipment would support a request for documents on the training, supervision, and discipline (or lack thereof) of the officers who arrived on scene and were in a position to effectuate an audio recording. If the rider remains the subject of dispute, then the parties shall confer on the rider again by **March 18, 2019** and finish conferrals by **March 26, 2019**. Plaintiff shall revise the rider according to the conferral, and if a dispute still remains, the Court will hear it at the status hearing after the March 12, 2019 status hearing. That next status hearing will be April 1, 2019 at 11 a.m. For now, the motion to strike the rider is granted.

**3. City's motion for protective order [302].** Next up is the City's motion to vacate the deposition notices for Mayor Emanuel, superintendent Eddie Johnson, and former IPRA Administrator Scott Ando. R. 302. For now, this motion too is granted in light of the overbreadth of the proposed *Monell* discovery discussed above. But on the current record, there might be discoverable information from Scott Ando and, possibly, Emanuel, at least in the form of answers to interrogatories before taking the next step of a deposition.

First, as to Scott Ando, because he was the Administrator of IPRA at the time of the shooting and for over one year afterwards, Ando might have discoverable information directly about the investigation of Defendant Hernandez's shooting of Johnson. An interrogatory specifically asking for Ando's involvement in or knowledge of the investigation might reveal a basis for a deposition on that topic. (If the City cannot produce an answer from Ando, then a subpoena may be served on him and conferral over whether the equivalent of an "interrogatory" first-step is warranted.) Also as to Ando, if there are particular IPRA investigations from the set of 212 that Plaintiff wishes to ask him about, then Ando's involvement in or knowledge of those investigations might be uncovered by an interrogatory, which again could lead to a deposition on those investigations. Plaintiff should be permitted at least to propose limited interrogatories to Ando. By **March 19, 2019**, Plaintiff shall provide limited interrogatories to Ando (through the City's counsel, if they are representing him), and the parties shall confer before the April 1, 2019 status hearing.

Second, as to Emanuel, on the *Monell* claim, the City has admitted that, on December 9, 2015, Emanuel stated before the City Council: "As we move forward, I am looking for a new leader of the Chicago Police Department to address the problems at the very heart of the policing profession. The problem is sometimes referred to as the 'Thin Blue Line.' The problem is other times referred to as the 'Code of Silence.' It is this tendency to ignore; it is the tendency to deny; it is the tendency in some cases to cover-up the bad actions of a colleague or colleagues." R. 308-2 at 3. This statement could lead to discoverable information because it is arguably an admissible

party-admission on the existence of a code of silence. The Court hastens to add that the basis for discoverability is *not* that Emanuel might qualify as a final policymaker, under 42 U.S.C. § 1983, who supposedly set a policy comprising the code of silence. There is no record evidence that supports the viability of that theory. This is a custom or practice theory of *Monell* liability, if there is municipal liability at all. Instead, the potential discovery arises from learning what was Emanuel's *factual basis* for making that statement to the City Council? It is not likely that the statement was made without some advance investigation. So, although this statement is not directly connected to the shooting of Johnson, this is similar in discoverability to the department-wide excessive-force analyses that the Court previously authorized. R. 161. Perhaps the answer to an interrogatory will not reveal a basis for more discovery, but Plaintiff should be permitted to propose a single interrogatory asking what factual basis Emanuel relied on in making the December 9, 2015 statement. Plaintiff shall propose the interrogatory to the City by **March 26, 2019**, and the parties shall confer over a proposed interrogatory in advance of the April 1, 2019 status hearing.

With regard to Eddie Johnson, all that Plaintiff really offers is that Johnson was involved in the investigation of a shooting committed by Hernandez's partner—not Hernandez. There is currently no basis for any further discovery as to Johnson.

**4. Anita Alvarez motion to quash subpoena for deposition [314].** Anita Alvarez, the former Cook County State's Attorney, moves to quash a subpoena for deposition issued by Plaintiff. R. 314. Plaintiff proposes various lines of inquiry, most of which are unreasonably burdensome on this *non-party*, former Cook County official

(such as the Chicago police code of silence), in light of the available discovery on party witnesses. But two lines of inquiry are permissible: first, in Alvarez's December 7, 2015 letter to IPRA, what are the bases for the factual assertions that are allegedly inconsistent with IPRA's findings. No deliberative-process privilege applies to the facts underlying the publicly disclosed, detailed letter. And the limited scope of the inquiry will balance the need for the evidence with the intrusion into the facts supporting the letter. If and when a deposition is authorized, the privilege still may be asserted on questions that goes beyond that scope. Second, Plaintiff may inquire as to the source of the image, used at the press conference announcing the declination, that purported to show Johnson holding a gun.

The proper way to initiate this discovery is to propose interrogatories (or the equivalent of them on this non-party) on Alvarez. On Category 1, Plaintiff at least must quote the specific factual assertions in the December 2015 letter that Plaintiff alleges are inconsistent with an IPRA finding, with a specific citation to the inconsistent IPRA finding. Category 2 is a simpler interrogatory to write. Plaintiff shall propose the interrogatories to Alvarez (of course through her counsel) by **March 28, 2019.** Plaintiff shall file a copy of the proposed interrogatories on that same date, and the Court will engage in at least preliminary discussions about them at the April 1, 2019 status hearing. For now, the motion is granted as to the deposition, but subject to the initiation of the interrogatories.

**5. Plaintiff's motion [305] to compel IPRA privilege-asserted records.**

Next, Plaintiff asks that IPRA be compelled to disclose the records listed on IPRA's attorney-client and work-product privilege log. Plaintiff first argues that the privileges have been waived due to untimeliness, but the objections are timely based on when IPRA was served with the records requests. In this case, IPRA has been represented by separate counsel. Even though IPRA is part of the City—IPRA is not a separate municipal entity—the representation by separate counsel is appropriate in this case. If anything, separate representation has allowed IPRA more independence in responding to discovery requests and allowed IPRA to devote more resources to producing discovery.

Plaintiff also contends that the privilege log is insufficient. But the log specifies the attorney involvement as to each withheld record. R. 305-6. And there is no basis to assert any crime-fraud exception, as Plaintiff casually mentions in the motion. R. 305 at 6. Nor is there anything nefarious about asserting the work-product doctrine in a situation where the lawsuit has already been filed. If discovery reveals a particular justification for overcoming the attorney-client privilege or, more likely, the work-product privilege at some point (such as an investigator invoking privilege to explain a crucial change in findings or a draft report), then Plaintiff may refile a more targeted motion. The Court adds a caveat that if any of the records for which work-product was asserted contain edits made by *non*-lawyers, like supervisory investigators, then those edits must be disclosed with the lawyer-authored edits redacted. Absent that, the motion is denied.

**6. IPRA investigation files: cost allocation.** Lastly, the parties dispute which side should bear the costs for producing the remainder of the 212 shooting files. R. 290, 294, 297. The parties have very different take-aways from the sampling of five files, and whether admissible evidence was generated from those files. At most, two of the five files, which Plaintiff picked, contained records that arguably are relevant to the *Monell* claim. At the discovery stage, it is enough to conclude that, because of the importance of IPRA's investigations to Plaintiff's *Monell* claim, the initial sampling provides justification to require that IPRA bear the costs (including the attorneys' fees for privilege review) for the next 20 files, which will cost around $7500, based on the cost of the first set of five. Plaintiff may either pick the specific 20 or ask for a random sample. The results of the next 20 files are not productive, then IPRA may ask to allocate future costs to Plaintiff, or at least share the costs. The parties are also free to agree on entire categories to exclude from the production in order to minimize the costs, such as medical records.[1] The presumptive deadline for disclosure

---

[1] Because the position papers have been relied on for judicial decision-making, the position papers themselves shall be unsealed (not the underlying exhibits, which contain a variety of private personal, non-party information that was not relied on for this decision). So Plaintiff shall file a public version of R. 290 (again, the position paper itself, not the exhibits). The Clerk shall unseal R. 294 and R. 297.

of the next 20 files is April 15, 2019.

ENTERED:

     s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 12, 2019